## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

**KENDRA BAKER** individually, and on
behalf of others similarly situated,

               Plaintiff,

vs.

**GLOBAL RESPONSE NORTH
CORPORATION**, a Michigan corporation;
**GLOBAL RESPONSE NORTH LLC**, a
Michigan Limited Liability Company, and
**GLOBAL RESPONSE LLC**, a Michigan
Limited Liability Company,

               Defendants.

Case No. 2:21-cv-00073-JTN-MV

Hon. Janet T. Neff

Mag. Maarten Vermaat

---

### PLAINTIFF'S UNOPPOSED MOTION FOR
### FINAL APPROVAL OF SETTLEMENT AND OTHER RELATED RELIEF

Plaintiff Kendra Baker ("Plaintiff") states as follows for her Unopposed Motion for Final

Approval of Settlement, Appointment of Class Representative and Class Counsel, and

Certification of Settlement Class:

1.      On April 14, 2021, Plaintiff filed this class and collective action lawsuit against

Global Response North Corporation, Global Response North, LLC, and Global Response, LLC

(collectively "Defendants") alleging violations of the Fair Labor Standards Act (FLSA), for breach

of contract, and for unjust enrichment. In her detailed (163 paragraph) Complaint, Plaintiff

articulates an alleged systematic and routine deprivation of wages that stems from unpaid time

booting up and shutting down her computer systems before, during, and after clocking in. ECF

No. 1.

2.      May 28, 2021, Defendants filed their Answer, which denied all of Plaintiff's allegations of unpaid work. Further, Defendants asserted 24 affirmative defenses, including that to the extent any off-the-clock work did occur, the time spent performing the work was *de minimis*, and thus, it was not compensable. ECF No. 11.

3.      Shortly thereafter, the Parties met and conferred regarding Plaintiff's imminent pre-discovery motion for conditional certification, pursuant to 29 U.S.C. § 216(b). After nearly a month of debating the motion for conditional certification and the form of notice to the collective, the Parties reached an agreement. On July 12, 2021, the Parties submitted a Stipulation and Proposed Order Regarding Conditional Certification, Scheduling, and Court-Authorized Notice. ECF No. 16. The following day, the Court entered the Parties' Proposed Order. ECF No. 17.

4.      Immediately thereafter, the Parties began working with Simpluris, Inc. (notice administrator) in order to have the agreed-upon notice mailed to the putative collective/class.

5.      Additionally, the Parties began negotiating the terms of a proposed Protective Order that would allow them to engage in class-wide, informal discovery in advance of a private mediation set to occur at the conclusion of the 45-day opt-in period. On October 7, 2021, the Court entered the Parties' proposed Protective Order. ECF No. 28. The Defendants then produced thousands of pages of employment and payroll documents for the class members. In advance of the mediation, Plaintiff Counsel enlisted the services of Eric R. Lietzow, CPA/ABV, of Desmond, Marcello & Amster (Los Angeles, California) to prepare a damage model for the class based on the payroll data produced by Defendants. Additionally, both Parties prepared comprehensive mediation summaries explaining their legal and factual positions on the case.

6.      On November 9, 2021, the Parties attended a private mediation with well-respected employment and labor attorney, Donald Gasiorek of Gasiorek, Morgan, McCauley, Greco & Kotzian, PC.

7.      Despite their best efforts, after a full day of mediation, the Parties were unable to reach an agreement, so they requested a mediator's proposal. Mr. Gasiorek issued a mediator's proposal, which required the Parties to respond privately within 48 hours. On November 11, 2021, Mr. Gasiorek informed the Parties that they had both accepted the Mediator's proposal. As such, the case was settled in principle. Over the next several weeks, the Parties negotiated and finalized the long-form settlement agreement, which was submitted to the Court for preliminary approval. *See*, ECF No. 34.

8.      On February 1, 2022, the Court granted Plaintiff's preliminary approval motion. ECF No. 36.

9.      A month later, on March 1, 2022, after removing names that were duplicated on the initial Class List, the Settlement Administrator (Rust Consulting, Inc.) mailed the court-approved Notice Packet to the 432 Class Members. Additionally, the Notice Packet was successfully sent to 431 of the Class Members by e-mail. However, of the 432 Class Notices mailed, the Settlement Administrator could not obtain a valid physical mailing address for 42 Class Members (even after an address trace and remailing). After receiving the Notice Packet (either by e-mail, mail, or both), just 3 Class Members requested to be excluded, and 0 Class Members objected. Overall, the Class Members' response to the Settlement was overwhelmingly positive.

10.      Prior to the Response Deadline, on April 15, 2022, Plaintiff filed her Unopposed Motion for Approval of Class Counsel's Fees and Costs and Class Representative Service Awards. ECF No. 37. In this Motion, Class Counsel provided an update regarding their fees and costs.

11.     Plaintiff now seeks final approval from the Court of the Parties proposed class and collective action settlement. For the reasons set forth in this unopposed Motion, Plaintiff respectfully submits to the Court that the Settlement Agreement attached with the Memorandum in Support of this Motion is fair, reasonable, and in the best interest of the Plaintiff and the Settlement Class. Accordingly, Plaintiff requests that the Court grant final approval of the Settlement Agreement, certify the proposed Settlement Class, and approve the incentive awards, attorney fees, and litigations expenses provided under the Parties' settlement.

Dated: June 15, 2022                      Respectfully Submitted,

                                          _/s/ Charles R. Ash, IV_____
                                          Kevin J. Stoops, P64371
                                          Charles R. Ash, IV, P73877
                                          Alana Karbal, P82908
                                          SOMMERS SCHWARTZ, P.C.
                                          One Towne Square, 17th Floor
                                          Southfield, Michigan 48076
                                          Telephone: 248-355-0300
                                          kstoops@sommerspc.com
                                          crash@sommerspc.com
                                          akarbal@sommerspc.com

                                          *Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

**KENDRA BAKER** individually, and on
behalf of others similarly situated,

                  Plaintiff,

vs.

**GLOBAL RESPONSE NORTH
CORPORATION**, a Michigan corporation;
**GLOBAL RESPONSE NORTH LLC**, a
Michigan Limited Liability Company, and
**GLOBAL RESPONSE LLC**, a Michigan
Limited Liability Company,

                  Defendants.

Case No. 2:21-cv-00073-JTN-MV

Hon. Janet T. Neff

Mag. Maarten Vermaat

---

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES FOR
## FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND
## OTHER RELATED RELIEF

## TABLE OF CONTENTS

I.     **INTRODUCTION** ................................................................................................1

II.    **PROCEDURAL HISTORY OF THE CASE** ......................................................2

    A.  The Proceedings, Pleadings, and Parties..........................................................2

    B.  The Mediation ...................................................................................................4

    C.  The Settlement Agreement ................................................................................4

          *1. The Settlement Class/Collective* ................................................................4

          *2. The Monetary Payments* .........................................................................5

          *3. The Release* ...........................................................................................5

III.   **ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL** .........................7

    A.  The Best Practicable Notice of Settlement Has Been Provided ............................7

    B.  Final Approval Standards Under Rule 23 and the FLSA .......................................7

          *1. The Likelihood of Success on the Merits Favors Settlement*......................9

          *2. There is No Risk of Fraud or Collusion*..................................................11

          *3. The Complexity, Expense and Likely Duration of the Litigation Favors
             Settlement* ..............................................................................................12

          *4. The Amount of Discovery Engaged in by the Parties Favors
             Settlement* ..............................................................................................14

          *5. The Opinions of Class Counsel and Class Representatives Favor Settlement*
             ...............................................................................................................14

          *6. The Reaction of the Absent Class Members Has Been Overwhelming
             Positive and Favors Settlement*..............................................................14

          *7. The Public's Interest is in Favor of the Settlement* ..................................15

    C.  The Court Should Grant Final Certification and Collective Action
       Designation ....................................................................................................16

    D.  Final Approval of Class Counsel's Fees and Costs, Administration Expenses, and
       Service Awards ...............................................................................................16

          *1. Final Approval of Class Counsel's Fees and Costs is Appropriate* .........16

          *2. The Named Plaintiff's Service Award is Reasonable* ..............................17

          *3. The Administrator and Administration Costs Should be Approved*..........18

    E.  Final Approval of Class Counsel is Appropriate .................................................18

IV.   **CONCLUSION** ............................................................................................19

i

## <u>TABLE OF AUTHORITIES</u>

*Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*
  2016 WL 6272094 (W.D. Mich. Mar. 1, 2016)................................................................. 14, 17

*Athan v. United States Steel Corp*,
  2021 WL 805430 (E.D. Mich. Mar. 3, 2021) ............................................................... 15

*Bell v. Consumer Cellular, Inc.*
  2017 WL 2672073 (D. Or. June 21, 2017) ................................................................. 12

*Carson v. Am. Brands, Inc.*
  450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981) ................................................... 9

*Cotton v. Hinton*
  559 F.2d 1326 (5th Cir. 1977) ....................................................................................... 7

*Daoust v. Maru Rest., LLC*
  2019 WL 2866490 (E.D. Mich. July 3, 2019) ............................................................. 17

*Does 1-2 v. Deja Vu Servs., Inc.*
  925 F.3d 886 (6th Cir. 2019) ............................................................................... 8, 9, 12

*DONNA PIEBER, on behalf of herself & all others similarly situated, Plaintiffs, v. SVS VISION, INC., Defendant.*
  2022 WL 687248 (E.D. Mich. Mar. 8, 2022) ............................................................... 17

*Eisen v. Carlisle & Jacquelin*
  417 U.S. 156 (1974) ........................................................................................................ 7

*Febus v. Guardian First Funding Grp., LLC*
  870 F. Supp. 2d 337 (S.D.N.Y. 2012) ......................................................................... 12

*Gascho v. Global Fitness Holdings, LLC*
  822 F.3d 269 (6th Cir. 2016) ........................................................................................ 12

*Hadix v. Johnson*
  322 F.3d 895 (6th Cir. 2003) ........................................................................................ 17

*Harsh v. Kalida Mfg., Inc.*
  2021 WL 4145720 (N.D. Ohio Sept. 13, 2021) .......................................................... 15

*Implement Workers of Am. v. Gen. Motors Corp.*
  2008 WL 2968408 (E.D. Mich. July 31, 2008) ............................................................. 9

*In re Bear Stearns Cos., Inc. Sec. Litig.*
  909 F.Supp.2d 259 (S.D.N.Y.2012) ............................................................................... 9

*In re Polyurethane Foam Antitrust Litig.*
  168 F. Supp. 3d 985 (N.D. Ohio 2016) ......................................................................... 9

*In re Telectronics Pacing Sys., Inc.*
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ....................................................................... 13

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*
  497 F.3d 615 (6th Cir. 2007) ...................................................................................... 8, 9

*IUE-CWA, v General Motors Corp.*
   238 F.R.D. 583 (E.D. Mich 2006) ....................................................................... 9, 11

*Lynn's Food Stores, Inc. v. U.S.*
   679 F.2d 1350 (11th Cir. 1982) ................................................................................ 8

*Mullane v. Central Hanover Bank & Trust Co.*
   339 U.S. 306 (1950) ................................................................................................. 7

*Officers for Justice v. Civil Serv. Comm'n*
   688 F.2d 615 (9th Cir. 1982) ............................................................................ 7, 8, 9

*Phillips Petrol. Co. v. Shutts*
   472 U.S. 797 (1985) ................................................................................................. 7

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*
   636 F.3d 235 (6th Cir. 2011) ................................................................................... 8

*Priddy v. Edelman*
   883 F.2d 438 (6th Cir.1989) ..................................................................................... 9

*Rikos v. Proctor & Gamble Co.*
   2018 WL 2009681 (S.D. Ohio Apr. 30, 2018) ....................................................... 12

*U.S. v. Rosenwasser*
   323 U.S. 360, 65 S.Ct. 295, 89 L.Ed. 301 (1945) ................................................. 15

*UAW v. Ford Motor*
   2006 WL 334283 .................................................................................................... 13

*United States v. Allegheny-Ludlum Industries, Inc.*
   517 F.2d 826 (5th Cir. 1975) ................................................................................... 7

*Waggoner v. U.S. Bancorp*
   2016 WL 7474408 (N.D. Ohio Dec. 29, 2016) ...................................................... 12

*White v. Morris*
   811 F. Supp. 341 (S.D. Ohio 1992) .......................................................................... 8

## Statutes

29 U.S.C. §216(b) ................................................................................... 2, 3, 5, 12

29 U.S.C. § 201 ........................................................................................ 2, 6, 19

## Rules

Fed. R. Civ. P. 23(e)(2) ........................................................................................... 8

Fed. R. Civ. P. 23(g)(3) ......................................................................................... 18

Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure .................................. 16

## I.    INTRODUCTION

Kendra Baker ("Plaintiff") and Global Response North Corporation, Global Response North, LLC, and Global Response, LLC (collectively "Defendants") have agreed to settle this "hybrid" wage and hour class/collective action lawsuit. The final class list Defendants provided to the Settlement Administrator contained the names of four hundred thirty two (432) Customer Service Representatives ("CSRs")[1]. Those individuals were provided notice if this settlement in the manner approved by the Court at the preliminary approval stage. The Class Members' response to the settlement was overwhelmingly positive, as just three (3) individuals requested to be excluded from the settlement and *none* of the Class Members had an objection to the settlement.

Under the terms of the parties' settlement (the "Settlement"), Defendant is required to make a non-reversionary payment of four hundred thousand dollars ($400,000.00). If final approval is granted, the non-reversionary payment of $400,000.00, will be distributed as follows: (i) $235,187.12 will be paid to the 432 putative class/collective members; (ii) $4,000 for a service award will be paid to Plaintiff, Kendra Baker; (iii) 133,333.33 will be paid to Sommers Schwartz, P.C. ("Class Counsel") for attorney fees; (iv) litigation costs in the amount of $12,479.55 to class counsel; and (v) fees to the settlement administrator in an amount of $15,000.00. (*See*, *Exhibit 1*, Settlement Agreement at ¶42.)

Filed in support of this Motion is the Joint Stipulation of Class Action Settlement (hereafter "Settlement") (*Exhibit 1*), the declaration of Plaintiff's Counsel, Kevin Stoops (*Exhibit 2*), and the declaration of the Settlement Administrator (Amanda Myette, Senior Project Manager at Rust Consulting, Inc.) (*Exhibit 3*). The Settlement defines the Class Members as follows: "all current

---

[1]  In the preliminary briefing, Plaintiff estimated a class size of 470 customer service representatives. However, after fully removing duplicated names on the Class List, the total Class Size was 432.

and former hourly Customer Service Representatives who worked for Defendants in Michigan at any time from July 12, 2018 through January 21, 2021" (the "Class Period"). After the Settlement Administrator removed duplicate names in the Class List, the total Class is comprised of 432 CSRs.

In connection with requesting final settlement approval, Plaintiff also requests that the Court confirm and approve as final: (1) certification of the Settlement Class and FLSA Collective under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and 29 U.S.C. § 201 et seq., both of which were certified in the Court's Preliminary Approval Order; (2) final appointment of Plaintiff Baker as the representative ("Class Representative") for the Class Members, and Class Counsel as counsel for the Class Members; (3) Class Counsel's fees and litigation expenses; (4) the incentive award for the Class Representative; and (5) the expenses paid to the third-party Settlement Administrator.

## II.    PROCEDURAL HISTORY OF THE CASE

### A.    The Proceedings, Pleadings, and Parties

Defendants offer outsourced call center services to businesses across the country. ECF No. 1 at ¶ 2. To provide these services, Defendants employ thousands of CSRs across the country. *Id*. Plaintiff, Kendra Baker, was employed by Defendants as a CSR in Michigan during the Class Period. Defendants paid her at a regular hourly rate of $10.50 per hour in exchange for the performing the duties of a CSR in Defendants' call center. *Id*. at ¶ 30.

Plaintiff filed this case on April 14, 2021, as a hybrid class and collective action pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. §216(b). ECF No. 1. In short, Plaintiff sought to recover unpaid wages for off-the-clock work that occurred before and after her scheduled shifts and during her unpaid lunch breaks. The allegations in the Complaint are discussed in more detail below.

Soon after Plaintiff filed her Complaint, Class Counsel was contacted by Counsel for Defendants for an extension on filing an answer to the Complaint. In that initial discussion with opposing counsel, the Parties also discussed the matter of Plaintiff's imminent pre-discovery motion for conditional certification and court authorized notice, pursuant to 29 U.S.C. § 216(b). On May 28, 2021, Defendants filed their Answer and Affirmative Defenses. ECF No. 11. At or around the same time, Counsel for Defendants notified Class Counsel that Defendants intended to stipulate to conditional certification, *if* an agreement could be reached on the definition of the collective and the form of the proposed notice. Subsequently, the Parties reached such an agreement and submitted a proposed stipulated Order granting conditional certification, along with a scheduling order for the notice process. ECF No. 16. On July 13, 2021, the Court entered the Parties' proposed Order and authorized the Notice to the conditionally certified Collective, as specified in the Court's Order. ECF No. 17.

On August 19, 2021, the notice administrator, Simpluris, Inc., mailed and email four hundred and fifty-three (453) copies of the Court-authorized notice to Defendant's CSRs.[2] During the forty-five (45) day opt-in period, the Parties engaged in informal discovery to prepare for a mediation on November 9, 2021. At the mediation, the Parties intended to negotiate the terms of a global resolution of all claims asserted in Plaintiff's complaint (both Rule 23 claims and FLSA claims). In advance of the mediation, Defendants produced payroll records and data illustrating over seventy thousand (70,000) CSR shifts and over fifteen thousand (15,000) workweeks. To

---

[2] The language in the definition of the conditionally certified collective and definition of the Settlement Class varies slightly, but encompasses the same individuals as the Settlement. In fact, the same excel spreadsheet with the class information was used for conditional certification and settlement notice.  However, Simpluris (notice administrator) did not fully remove duplicate CSRs, which resulted in twenty one (21) CSRs receiving the 216(b) notice twice. Rust, the Settlement Administrator, has properly removed all duplicate CSRs. [*See*, Exh. 3 at ¶ 6.]

assist in analyzing the data, Class Counsel enlisted the services of Eric R. Lietzow, CPA/ABV, of Desmond, Marcello & Amster in Los Angeles, California.[3]

**B.    The Mediation**

As scheduled, the Parties attended the mediation with well-respected mediator and employment lawyer, Donald Gasiorek of Gasiorek, Morgan, McCauley, Greco & Kotzian, PC. However, after a full day of mediation, the Parties could not reach an agreement on the terms of a class-wide settlement. At the conclusion of the mediation, and after hearing an entire day of arguments from both sides, Mr. Gasiorek issued a mediator's proposal for a global resolution of all claims in the amount of $400,000.00. The Parties were given forty-eight (48) hours to either accept or reject the proposal. [*Exh. 2*, Stoops Decl. at ¶ 17.]

On November 11, 2021, Mr. Gasiorek informed the Parties that both sides had accepted his proposal. [*Id.*] Over the next several weeks, the Parties negotiated the terms of the long-form Settlement Agreement, which is now before the Court for preliminary approval.

**C.    The Settlement Agreement**

The Settlement's material terms are briefly summarized below, but the full agreement is attached hereto as *Exhibit 1*.

**1.    *The Settlement Class/Collective***

For purposes of settlement only, the parties have agreed to certification of the following class pursuant to Federal Rule of Civil Procedure 23: "all current and former hourly Customer Service Representatives who worked for Defendants in Michigan at any time from July 12, 2018 through January 21, 2021, and who did not submit a timely and valid Request for Exclusion as

---

[3] *See*, https://www.dmavalue.com/ (last visited Jan. 5. 2022). Mr. Lietzow is a principal at the firm, which specializes in business valuation, economic damage modeling, class action damage modeling, and forensic accounting.

provided in this Agreement." [*Exh. 1*, Settlement, ¶ 30.] Likewise, the parties have agreed to conditional certification of an FLSA collective pursuant to 29 U.S.C. § 216(b) that is identical to the Rule 23 Class. After removing duplicates from the data, this final Class/Collective is comprised of approximately four hundred thirty two (432) of Defendants' CSRs. [*Exh. 2* at ¶ 14; *Exh. 3* at ¶ 6.] Based on Class Counsel's analysis of the payroll data, the CSRs worked approximately 15,715 workweeks (8,217 pay periods) during the Class Period. [*Exh. 2* at ¶ 13.]

### 2. *The Monetary Payments*

Defendants have agreed to create a total settlement fund of four hundred thousand dollars ($400,000.00) – the "Gross Settlement Fund." The following amounts will be deducted from the Gross Settlement Fund: $133,333.33 for Class Counsel's Fees (33.33% of Gross Settlement Fund); $12,479.55 for Litigation Expenses; $15,000 for Settlement Administration Expenses; and $4,000.00 for Plaintiff's Class Representative Service Award. *See generally*, *Exh. 1*. The balance of the settlement fund ($235,187.12), the "Net Settlement Amount," will be distributed to the 432 Settlement Class Members based on the formula set forth in the Settlement Agreement.

Specifically, under the Settlement Agreement, the Individual Settlement Payments will be paid from the Net Settlement Amount by the Settlement Administrator by, first, dividing the Net Settlement Amount by the total number of pay periods Settlement Class Members were employed ("Pay Period Amount"). The Settlement Administrator will then multiply the Pay Period Amount by the total number of pay periods that each Settlement Class Member was employed during the Class Period to arrive at an estimated Individual Settlement Amount. [*See*, *Exh. 1*, § 42(b).]

### 3. *The Release*

The Settlement Agreement provides a thorough and complete explanation of the claims to be released by the Settlement Class Members. Specifically, for the Settlement Class Members

"Released Claims" means: "all failure to pay wage claims that have been alleged or that could have been alleged in the Action including all of the following claims for relief: (a) that Defendants failed to pay and/or properly calculate all wages due, including the regular rate of pay, straight time, overtime, double-time, premium pay, minimum wages, and all other forms of wages; (b) that Defendants failed to provide compliant meal periods and/or proper premium payments in lieu thereof; (c) that Defendants failed to provide compliant rest breaks and/or proper premium payments in lieu thereof; (d) that Defendants failed to maintain required records; (e) that Defendants owe other monies or penalties under the wage and hour laws pleaded in the Action or that could have been pleaded in the action; and (f) that Defendants are responsible for the payment damages, penalties, interest and other amounts recoverable under said causes of action alleged in the Action, including without limitation the following claims based on or reasonably relating to claims asserted or alleged in the action: claims for unpaid wages (including claims for regular wages, overtime, regular rate calculations, gap time, off-the-clock or unpaid time, breaks), under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*., state wage and hour laws, and state common law breach of contract and unjust enrichment theories. The Released Claims also include all claims Plaintiff, Opt-In Plaintiffs and the Settlement Class Members may have against the Released Parties relating to (i) the payment and allocation of attorneys' fees and costs to Class Counsel pursuant to this Agreement and (ii) the payment of the Class Representative Service Award pursuant to this Agreement. The period of the Release shall be from the commencement of the Class Period, as defined above, to July 13, 2021, the date of conditional certification ("Covered Period"). [*Exh. 1* at ¶ 23.]

Additionally, the Named Plaintiff/Class Representative, Kendra Baker, will provide a General Release of all existing claims in exchange for the consideration set forth in the Settlement Agreement. [*Exh. 1* at ¶ 38.]

## III.    ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL

### A.  The Best Practicable Notice of Settlement Has Been Provided

The mailing of the Notice and corresponding forms to Class/Collective Members, and the general administration of the notice process as described in the Settlement Agreement, meets the requirements for the "best practicable" notice in this case as necessary to protect the due process rights of Class Members. *See e.g., Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections"). Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement Agreement, and order its approval, secure in the knowledge that all absent Class/Collective Members have been given the opportunity to participate fully in the opt-in, opt-out, comment, and approval process.

### B.  Final Approval Standards Under Rule 23 and the FLSA

"Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977), *citing United States v. Allegheny-Ludlum Industries, Inc*., 517 F.2d 826 (5th Cir. 1975). See also, *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is common knowledge that class action

suits have a well-deserved reputation as being most complex." *Id.*  For this reasons, courts have

recognized "an initial presumption of fairness exists if the settlement is recommended by class

counsel after arms-length bargaining." *White v. Morris*, 811 F. Supp. 341, 342 (S.D. Ohio 1992),

*citing* Herbert B. Newberg, 2 *Newberg on Class Actions* § 11.41, at 453 (2d ed. 1985).

Class action settlements require court approval as fair, reasonable, and adequate. *See*, Fed.

R. Civ. P. 23(e)(2). As the Sixith Circuit has observed, to determine the appropriateness of a

proposed settlement a district court should examine the following:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of
> the litigation; (3) the amount of discovery engaged in by the parties; (4) the
> likelihood of success on the merits; (5) the opinions of class counsel and class
> representatives; (6) the reaction of absent class members; and (7) the public interest

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,

497 F.3d 615, 631 (6th Cir. 2007); *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894 (6th Cir.

2019) (same). Of the *UAW* factors, "[t]he most important of the factors to be considered in

reviewing a settlement is the probability of success on the merits." *Poplar Creek Dev. Co. v.

Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011). For this reason, this factor is

addressed first in the analysis below.

Similarly, under the FLSA, a settlement that results in waiver of FLSA claims should be

approved where it is "entered as part of a stipulated judgment approved by the court after

scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53

(11th Cir. 1982). A settlement is fair, adequate and reasonable, and therefore merits final approval,

when "the interests of the class are better served by the settlement than by further litigation."

*Manual for Complex Litigation, Fourth* (Fed. Judicial Center 2004) ("*Manual*"), § 21.6 at 309.

Each of the seven factors used by district Courts in the Sixth Circuit weigh in favor of final

settlement approval, and, for the same reasons, also warrants approval under the FLSA.

## 1. The Likelihood of Success on the Merits Favors Settlement

A court "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981)). However, "[i]n evaluating settlements, courts are not required 'to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Déjà vu Servs., Inc.* at 895-96, *quoting Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "Whatever the relative merits of the parties' positions, there is no such thing as risk-free, expense-free litigation." *IUE-CWA, v General Motors Corp.,* 238 F.R.D. 583, 596 (E.D. Mich 2006).

Furthermore, "[i]t is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair. Indeed, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016), *quoting In re Bear Stearns Cos., Inc. Sec. Litig.*, 909 F.Supp.2d 259, 270 (S.D.N.Y.2012) (citations and internal quotation marks omitted). *See also*, *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 2008 WL 2968408, at *24 (E.D. Mich. July 31, 2008) (same); *Priddy v. Edelman,* 883 F.2d 438, 447 (6th Cir.1989) ("The fact that the plaintiff might have received more if the case had been fully litigated is no reason not to approve the settlement.").

In the present case, the payroll data produced by Defendants established that approximately 6,692 of the 15,715 workweeks were overtime work weeks. [*Exhibit 2*, Stoops Decl. at ¶ 13.] Accordingly, far less than half of the workweeks during the Class Period implicated the FLSA. [*Id.*] For argument sake, if Plaintiff was entirely successful in establishing liability on the FLSA claim, and also, established Class Members worked twenty (20) minutes a day off-the-clock, then the unpaid overtime wages across the Settlement Class (based on an average hourly rate of $11.38) would amount to $190,387.34. Further, if the willfulness was established and the damages were liquidated, the maximum combined value (best case scenario) of the Settlement Class Members' FLSA claims is $380,774.68. [*Id*. at ¶ 15.]

Of course, Defendants vehemently dispute that Class Members worked off-the-clock for twenty (20) minutes per day. In fact, Defendants dispute *any* off-the-clock work occurred, and, to the extent that off-the-clock work did occur, the time was *de minimis* (non-compensable). [*Exh. 2* at ¶ 29.] Notably, if the Defendants are successful in establishing the *de minimis* defense raised, the Plaintiff and Class Members would not make any recovery under the FLSA. On the other hand, Class Counsel is adamant the doctrine is inapplicable to the claims alleged, even if the off-the-clock work established is far less than Plaintiff has alleged in the Complaint. Suffice it to say, there is a bona fide dispute regarding the application of the *de minimis* doctrine.

Additionally, there is a bona fide dispute regarding the viability of the common law claims asserted in the Complaint. [*See*, ECF No. 1, Count II (Breach of Contract) and Count III (Unjust Enrichment).] First, Defendants have argued statutory preemption applies to these claims. [*Exh. 2* at ¶ 29.] While Class Counsel completely disagrees with this argument, if the issue was decided in Defendants' favor, it would completely eliminate the Class Members' common law claims. Next, Defendants maintain discovery would establish these claims are not suitable for class adjudication.

[*Id*.] Again, Class Counsel respectfully (and firmly) disagrees. However, once again, if the issue is decided in Defendants' favor, the Class Members would not receive anything for their common law claims. As referenced above, "there is no such thing as risk-free litigation." *IUE-CWA* at 596.

With all of this in mind, based on twenty (20) minutes of off-the-clock work per day at the Class Members' average hourly rate of $11.38 per hour, the maximum damages the Class Members could recover under Counts II and III of the Complaint are $171,136.20. [*Id.* at ¶ 15.]

Accordingly, the maximum damages available to the Class Members for all three claims asserted is $551,910.88. [*Id.* at ¶ 16.] And this is based on a high-end estimation of twenty (20) minutes of unpaid work per day. This means, putting aside the many defenses raised by Defendants, the proposed Settlement Agreement provides approximately 72% of the Class Members' total damages. [*Id.* at ¶ 18.] In fact, (under Class Counsel's damage analysis) the Gross Settlement Fund is *more* than the actual wages owed to the Class Members if FLSA liquidated damages are taken out. Furthermore, if the estimated Net Settlement Amount of $235,187.12 is divided equally, each of the 432 Class Members would receive over $540.00 each. [*Id.* at ¶ 20.] This point is made strictly to illustrate how substantial the payments are under the Settlement Agreement. In reality, the formula under the Settlement Agreement distributes the Net Settlement Amount in a far more accurate and equitable manner – on the basis of each Class Members work weeks during the Class Period.

In sum, this factor supports approval of the Parties' Settlement.

### 2. *There is No Risk of Fraud or Collusion*

The Settlement Agreement at issue was reached after a mediation with a qualified mediator. Moreover, it was the result of the mediator's proposal after a full-day of arms-length settlement negotiations. The Sixth Circuit has recognized these facts weigh in favor of approving the

settlement. *See*, *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 277 (6th Cir. 2016) (holding the fact that the parties engaged in a "formal mediation session" weighed against the possibility of fraud or collusion). *See also*, *Rikos v. Proctor & Gamble Co.*, No. 1:11-CV-226, 2018 WL 2009681, at *7 (S.D. Ohio Apr. 30, 2018) (holding the use of mediators "indicates there is no collusion");*Waggoner v. U.S. Bancorp*, Case No. 5:14-cv-1626, 2016 WL 7474408, at *3 (N.D. Ohio Dec. 29, 2016) (finding no risk of fraud or collusion where the settlement was the result of, *inter alia*, "an involved mediation before an experienced mediator").

The second factor also weighs in favor of granting final approval of the Parties' Settlement Agreement.

### 3. The Complexity, Expense and Likely Duration of the Litigation Favors Settlement

In *Déjà vu Services, Inc*., the Sixth Circuit recognized the complexity of a FLSA and Rule 23 hybrid wage and hour class/collective action lawsuit. 925 F.3d 886, 898 (6th Cir. 2019). The Court went on to explain, this factor weighs in favor of approving the settlement because the litigation could otherwise drag on for years occupying the resources of the parties and the court. *Id. See also*, *Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (holding "courts have recognized that FLSA cases are complex and that [a]mong FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b).") (internal quotation omitted); *Bell v. Consumer Cellular, Inc.*, 2017 WL 2672073, at *11 (D. Or. June 21, 2017) (holding "FLSA claims involve complex mixed questions of fact and law, and issues must be resolved in light of volumes of legislative history and over four decades of legal interpretation and

administrative rulings. Moreover, courts have recognized that hybrid Rule 23 class and collective actions are the most complex FLSA cases.") (quotation omitted).

Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement. *See e.g., In re Telectronics Pacing Sys., Inc*. 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). For class actions in particular, courts view settlement favorably because it "avoids the costs, delays and multitudes of other problems associated with them." *Id*. at 1013.

Here, if not for the Settlement, the case would have continued to be fiercely contested by all parties. Defendants, who are represented by capable and well-versed employment counsel, have demonstrated the commitment to defend the case through trial and beyond trial, if necessary. [See, [*Exh. 2* at ¶ 30 ("settling this case now saves the parties from years of litigation.")] The expense of continued litigation would be substantial. The Parties would have to complete lengthy and extensive discovery involving reviewing and analyzing thousands of additional documents, the need to depose dozens of additional witnesses and complete expensive expert discovery. Any trial would require a month or more to prepare and complete. Even if successful at trial, there most certainly would be appeals which would deny the Class Members any recovery for years. Avoiding such unnecessary expenditure of time and resources clearly benefits all parties and the Court. *See UAW v. Ford Motor Co.,* 2006 WL 334283; 2006 U.S. Dist. LEXIS 70741 at *70 (E.D. Mich. 2006) ("The costs and uncertainty of lengthy and complex litigation weigh in favor of settlement.").

This factor also supports final approval of the Settlement Agreement.

#### 4.  *The Amount of Discovery Engaged in by the Parties Favors Settlement*

While the current settlement did not follow extensive formal discovery, there was a significant and robust exchange of documents and electronically stored information leading up to the mediation, where a settlement was reached. [*Exh. 2* at ¶¶ 9-16.] Overall, the data that was used to model the damages for the Parties' mediation would be the same data used to model damages to a jury. Further, as explained above, the Settlement Agreement recovers 72% of the maximum possible damages based on the high-end allegations in the Complaint. [*Id.* at ¶ 18.]

In other words, the Parties have conducted significant discovery, enough to allow them to properly evaluate the settlement in light of the amount of wages in dispute. This factor favors final approval of the settlement.

#### 5.  *The Opinions of Class Counsel and Class Representatives Favor Settlement*

"[T]he opinions of class counsel regarding the fairness of the settlement should be given significant weight in this case." *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, 2016 WL 6272094, at *2 (W.D. Mich. Mar. 1, 2016). Plaintiff is represented by Class Counsel who is highly experienced in wage and hour class and collective action lawsuits. As explained in *Exhibit 2*, Class Counsel supports the Settlement Agreement as an outstanding result for the Plaintiff and the Class Members. [Exh. 2 at ¶ 52] Additionally, Plaintiff, the sole Class Representative, has indicated her support of this settlement by executing the Settlement Agreement.

This factor support final approval of the Settlement Agreement.

#### 6.  *The Reaction of the Absent Class Members Has Been Overwhelming Positive and Favors Settlement*

In support of this motion, Amanda Myette, Senior Project Manager at Rust Consulting, Inc., has prepared a declaration. [*Exhibit 3*, Myette Declaration.] In her declaration, Ms. Myette outlines the notice procedures followed and the responses to the Notice Packet that was mailed.

Specifically, her declaration explains that zero (0) Class Members have objected to the Settlement Agreement and only three (3) Class Members have sought to exclude themselves. [Id. at ¶¶ 11-12.] Accordingly, the response to the Settlement Agreement from the absent Class Members has been overwhelmingly positive.

This factor favors final approval of the Settlement Agreement.

### 7. *The Public's Interest is in Favor of the Settlement*

Court's in this Circuit have recognized that public interest favors settlements of this type of class action litigation. In *Athan v. United States Steel Corp.*, 2021 WL 805430 (E.D. Mich. Mar. 3, 2021), the Court held that "[i]n general, the public interest is served by the proposed settlement as it implicitly serves the purpose and intent of Congress in enacting the FLSA: 'to raise substandard wages and to give additional compensation for overtime work ... thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" (*quoting U.S. v. Rosenwasser*, 323 U.S. 360, 361, 65 S.Ct. 295, 89 L.Ed. 301 (1945) (*quoting* Sen. Rep. No. 884 (75th Conf., 1st Sess.)). *See also*, *Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2021 WL 4145720, at *7 (N.D. Ohio Sept. 13, 2021) ("the Court finds that public interest favors the settlement of this class action litigation. This is especially true in the cases involving wage and hour claims, which, by their very nature, implicate the public interest.").

Here, just like in *Athan*, the Settlement Agreement serves the purpose and intent of Congress in enacting the FLSA. Therefore, this factor also supports final approval of the Settlement Agreement.

**C.  The Court Should Grant Final Certification and Collective Action Designation**

The Court previously certified the Class and Collective, for settlement purposes only, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and as a FLSA collective action, based on parties stipulation. ECF Nos. 17, 36. In the preliminary approval Order, the Court ruled that, for purposes of the settlement, the Class meets the Rule 23 requirements as well as the FLSA collective action requirements. *Id.* The Court also conditionally appointed the named Plaintiff as Class Representatives and Plaintiffs' counsel as Class Counsel. *Id*. For these reasons, and the reasons set forth in the Motion for Preliminary Approval, Plaintiff respectfully submits that the Court should grant final certification and collective action designation for purposes of settlement of this matter and should confirm the appointment of the class representative and class counsel.

**D.  Final Approval of Class Counsel's Fees and Costs, Administration Expenses, and Service Awards**

On April 15, 2022, Plaintiff filed a detailed Unopposed Motion and Memorandum of Points and Authorities for Approval of Class Counsel's Fees and Costs and Class Representative Service Awards ("Fee Motion"). ECF No. 37. At this time, in addition to granting final approval of the Settlement Agreement, Plaintiff requests that the Court also grant her Fee Motion. Plaintiff offers this brief recap and update to address the reasonableness of the requests contained therein.

**1.  *Final Approval of Class Counsel's Fees and Costs is Appropriate***

The Settlement allocates, subject to the Court's final approval at the fairness hearing, $133,333.33 (or 33-1/3% of the Gross Settlement Amount), to Class Counsel for attorneys' fees and $12,479.55 in lawsuit costs.

In the Fee Motion, Class Counsel represented they had reasonably expended 219 hours at that point in time, which placed their lodestar at $92,795.00. At the time the present motion was

16

filed, the total hours had reached 248.60, making the current lodestar $106,965.00. [Exh. 2 at ¶ 37.] By the conclusion of this case, including time spent preparing and attending the hearing, as well as time spent assisting the Settlement Administrator through disbursement of the Settlement, it is estimated the lodestar multiplier will be approximately zero (0). *Id.* at ¶ 35. In other words, there will be no multiplier in this Settlement.

Accordingly, Class Counsel's request for one third of the gross settlement fund, or what approximately amounts to their lodestar, is completely reasonable. *See*, *Am. Copper & Brass, Inc.*, at *3 (approving one-third of the gross settlement fund). *See also*, ECF No. 37 at 4 (collecting cases supporting a one-third fee from the settlement fund).

Currently, Class Counsel has incurred $12,479.55 in litigation costs. [*Exh. 2* at ¶ 49.] The Notice Packet distributed to the Class Members advised them that Class Counsel may seek up to $15,000 for litigation costs. [*See*, *Exh. 3*, Tab A (Class Counsel "will request … up to $15,000.00 for litigation expenses.")]  Fortunately, Class Counsel was able to limit costs, and the unused funds for the litigation costs were added back into the Net Settlement Fund.

### 2. *The Named Plaintiff's Service Award is Reasonable*

Incentive awards are "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). In this case, the Plaintiff seeks a modest Service Award of $4,000.00. *Exh. 1*, Settlement at ¶ 42(d). This is reasonable in light of other Service Awards granted in this District and others throughout the Sixth Circuit. *See*, *Am. Copper & Brass, Inc.*, at *2 (approving $10,000) service award); *DONNA PIEBER, on behalf of herself & all others similarly situated, Plaintiffs, v. SVS VISION, INC., Defendant.*, 2022 WL 687248, at *3 (E.D. Mich. Mar. 8, 2022) (holding "service awards of $6,000 and $3,000 … are fair and reasonable"); *Daoust v.*

*Maru Rest., LLC*, No. 17-CV-13879, 2019 WL 2866490, at *5 (E.D. Mich. July 3, 2019) (holding $5,000 service award was reasonable). *See also*, ECF No. 37 at 10 (collecting cases).

### 3. The Administrator and Administration Costs Should Be Approved

The Settlement provides for the payment of up to $15,000.00 to the Settlement Administrator, Rust Consulting, Inc., for their settlement administration services. [Exh. 1, Settlement at ¶¶ 50-51.] The services provided by the Settlement Administrator include: the preparation and sending of notice to the class members, handling of undeliverable notices, handling of Requests for Exclusions and Dispute forms, distributing Individual Settlement Payments, deducting taxes from Individual Settlement Payments, processing and mailing tax payments to the appropriate state and federal tax authorities, and other associated settlement administration tasks. [*See*, Exh. 1, Settlement at ¶ 41.]

In her declaration, Ms. Myette outlines the services provided and explains that Rust Consulting has incurred the full $15,000.00 in administration expenses provided by the Parties' Settlement Agreement. *See generally*, *Exhibit 3*. Additionally, Class Counsel has explained that given the Class Size and the services provided by Rust Consulting, $15,000.00 is a reasonable expense in his experience in class and collective wage and hour cases. *Exh. 2*, at ¶ 47.

For these reasons, the settlement administration expense incurred was reasonable, necessary for the benefit of the class, and should therefore be approved.

### E. Final Approval of Class Counsel is Appropriate

Where, as here, a class action lawsuit is settled prior to class certification, the Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Then, at the final approval stage,

these lawyers can seek to be appointed class counsel in conjunction with the certification of the settlement class. *Id.* at 23(g)(1).

Here, the undersigned law firm of Sommers Schwartz, P.C. was appointed as interim Class Counsel. Now, they respectfully ask that the Court to confirm and finalize their appointment as Class Counsel. The firm is comprised of experienced employment rights lawyers and have been appointed class counsel in many class action lawsuits alleging violations of the Nation's wage and hour laws.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff, by and through her counsel, respectfully requests that the Court grant final approval of the Settlement Agreement. Additionally, in connection with final approval of the Settlement Agreement, Plaintiff also requests that the Court confirm and approve as final: (1) certification of the Settlement Class and FLSA Collective under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and 29 U.S.C. § 201 et seq., both of which were certified in the Court's Preliminary Approval Order; (2) final appointment of Plaintiff Baker as the representative ("Class Representative") for the Class Members, and Class Counsel as counsel for the Class Members; (3) Class Counsel's fees and litigation expenses; (4) the incentive award for the Class Representative; and (5) the expenses paid to the third-party Settlement Administrator.

Plaintiff has attached a proposed order to this Memorandum as *Exhibit 4*.

Dated: June 15, 2022                    Respectfully Submitted,

                                        */s/ Charles R. Ash, IV*
                                        Kevin J. Stoops, P64371
                                        Charles R. Ash, IV, P73877
                                        Alana Karbal, P82908
                                        SOMMERS SCHWARTZ, P.C.

19

One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
crash@sommerspc.com
akarbal@sommerspc.com

*Counsel for Plaintiff*